[Cite as *State v. Ropp*, 2020-Ohio-824.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-44 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-123 |
| | : | |
| WARREN L. ROPP | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of March, 2020.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

RICHARD L. KAPLAN, Atty. Reg. No. 0029406, P.O. Box 751192, Dayton, Ohio 45475
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Warren L. Ropp appeals his convictions for the following offenses: Count I, improper handling of firearms in a motor vehicle, in violation of R.C. 2923.16(B)(1) (transport of a loaded weapon), a felony of the fourth degree; Count II, improper handling of firearms in a motor vehicle, in violation of R.C. 2923.16(A)(1) (discharge firearm in a motor vehicle), a felony of the fourth degree; Count IV, discharge of a firearm on or near prohibited premises (discharge over a public road), in violation of R.C. 2923.162(A)(3)(C)(2), a felony of the third degree; and Count V, improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161(A)(1)(C), a felony of the second degree. He was also found guilty of several firearm specifications: Count IV included two firearm specifications for one and three years respectively; and Count V included three firearm specifications for one, three, and five years respectively. Ropp filed a timely notice of appeal with this Court on December 11, 2018.

{¶ 2} The incident which formed the basis for Ropp's convictions occurred at approximately 9:30 a.m. on the morning of August 21, 2017, when Greg Ervin returned to his residence in Rosewood, Ohio. Ervin was returning home from an overnight trip for his job as a semi-truck driver when his friend, Chis Longstreath, called him with information regarding Ervin's live-in girlfriend, Barb Stickley. Longstreath informed Ervin that Stickley had called him and said there was "somebody" in Ervin's house. Tr. 139.

{¶ 3} Shortly thereafter, Ervin arrived at his residence with Longstreath and Longstreath's wife, Stacey. Ervin testified that he parked his vehicle across the street from his main residence and in front of his other "house," a separate residence that he had previously bought and was in the process of renovating. Ervin testified that the other house was furnished and had two working bathrooms. Ervin testified that he used the

other residence for family gatherings, and as a place for houseguests to sleep.

{¶ 4} Ervin testified that he exited his vehicle, entered his other residence, and immediately observed Ropp lying on a loveseat in the front room. Ervin testified that he knew the individual on his loveseat was Ropp because Ervin had previously sold him motorcycle parts on two to three occasions. Ervin testified that Ropp appeared to be asleep and was not wearing a shirt. Ervin also testified that Ropp's pants were undone, and his hands were stuck down his pants. In an effort to wake Ropp, Ervin placed an ice tray from the freezer on Ropp's stomach area. When this failed to awaken Ropp, Ervin placed the ice tray on the kitchen counter, walked back to the loveseat, grabbed Ropp by the arm, and pulled him into a standing position. Once standing, Ropp awoke. Ervin told Ropp that he had to leave and guided him toward the front door.

{¶ 5} Ervin testified that he walked Ropp across the street to his vehicle, a white Chevy pickup truck, which was parked in front of Ervin's main residence. Ervin testified that he told Ropp to leave because he (Ervin) "didn't know what was going on." Tr. 148. At that point, Ropp got in his truck and drove away without saying anything to Ervin. Ervin testified that he and the Longstreaths went inside his main residence to have coffee. After approximately 30 minutes, Ervin testified that he heard a loud noise, which he described as the sound of a high-powered rifle.

{¶ 6} Ervin ran out on his front porch, at which point his neighbor, Reva Wright, approached him and informed him that the man who just left in the pickup truck had shot at Ervin's vehicle. Wright identified the man as Ropp. Wright testified that although she did not see Ropp fire a gun at Ervin's house, she observed him driving away from the scene approximately ten seconds after shots were fired, and he was the only person in

the vicinity. Wright also testified that the area by Ervin's residence smelled like a gun had just been fired. Ervin testified that he owned two trucks (a blue Chevy and a black Chevy), and both were parked by his renovated residence. When Ervin went over to his vehicles, he observed glass all over the ground nearby, and he called 911. Once deputies from the Champaign County Sheriff's Office (CCSO) arrived, Ervin identified the individual who shot at his trucks and residence under renovation as Ropp.

{¶ 7} In addition to breaking the vehicles' windows, the police found a bullet hole in Ervin's blue truck. The police also located a bullet hole in a work storage space attached to Ervin's renovated residence. The bullet was found to have struck the siding on the house, gone through the wall, and then come to rest in the opposite wall.

{¶ 8} Based upon the information received regarding the identity of the shooter, the deputies obtained Ropp's cell phone number and contacted him later in the morning of August 21, 2017. Ropp informed the deputies that he was at an address in St. Paris, Ohio. The deputies advised him to remain where he was and wait for their arrival. Shortly thereafter, Ropp was taken into custody in St. Paris by deputies from the CCSO. The deputies did not recover a firearm when Ropp was apprehended.

{¶ 9} On June 4, 2018, Ropp was indicted for the following offenses: Count I, improper handling of firearms in a motor vehicle (transport of a loaded weapon); Count II, improper handling of firearms in a motor vehicle (discharge firearm in a motor vehicle); Count III, tampering with evidence; Count IV, discharge of a firearm on or near prohibited premises (discharge over a public road); and Count V, improperly discharging a firearm at or into a habitation. Count IV included two firearm specifications, and Count V included three firearm specifications. At his arraignment on June 11, 2018, Ropp pled

not guilty to the charged offenses.

{¶ 10} On October 4, 2018, the parties filed a joint stipulation regarding the fact that Ropp tested positive for the presence of gunshot residue. The matter proceeded to jury trial on November 13-16, 2018. The jury found Ropp guilty of Counts I, II, IV, and V, as well as all of the firearm specifications; it found him not guilty of Count III. At sentencing on November 26, 2018, the trial court concluded that Count II, improper handling of firearms in a motor vehicle (discharge firearm in a motor vehicle) merged with Count IV, discharge of a firearm on or near prohibited premises (discharge over a public road), and the State elected to proceed to sentencing on Count IV. Thereafter, the trial court sentenced Ropp to 18 months in prison for Count I, 36 months in prison for Count IV, and seven years for Count V. The trial court did not impose a sentence on the specifications attached to Count IV or the first specification to Count V. With respect to the second and third specifications attached to Count V, the trial court imposed a sentence of three years for Specification 2 and five years for Specification 3, for a total of eight years. The trial court then ordered the sentence for the specifications (eight years) to be served consecutively to the sentence imposed for Count V (seven years). The trial court ordered that the sentences for Counts I and IV be served concurrently to the sentences imposed for Count V and the firearm specifications, for an aggregate sentence of 15 years in prison.

{¶ 11} It is from this judgment that Ropp now appeals.

{¶ 12} Initially, we note that the jury verdict form finding Ropp guilty of Count IV, discharge of a firearm on or near prohibited premises incorrectly referred to the offense as a misdemeanor of the first degree. Additionally, Ropp's judgment entry of conviction

incorrectly referred to Count IV as a felony of the fourth degree. As stated above, Count IV was felony of the third degree. Accordingly, the trial court should issue a nunc pro tunc order amending the judgment entry of conviction to reflect that Count IV was a felony of the third degree.

{¶ 13} Ropp's first assignment of error is as follows:

THE TRIAL COURT PREJUDICIALLY ERRED WHEN WARREN WAS CONVICTED OF FOUR CHARGES WHICH ACCORDING TO R.C. 2941.25 ARE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶ 14} In his first assignment, Ropp contends that the trial court erred when it failed to merge Counts I, II, IV, and V, as he argues that they were allied offenses of similar import.

{¶ 15} R.C. 2941.25, Ohio's allied offenses statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 16} The Ohio Supreme Court clarified the applicable standard when determining whether offenses merge as allied offenses of similar import in *State v. Ruff*,

143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 30-31.

{¶ 17} In *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, we stated the following:

> [T]he Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, [145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266]. There the majority characterized the analysis in its earlier [*State v.*] *Johnson*[, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead

embraced *Ruff*, which, as noted above, considers a defendant's conduct, his animus, and the import or significance of his offenses. Applying *Ruff*, the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

* * *

We reach the same conclusion under the *Ruff* standard, which the Ohio Supreme Court applied in *Earley*. We see nothing in *Ruff* that alters or undermines the foregoing analysis about [the defendant's] commission of murder and aggravated robbery involving the same conduct committed with the same animus. For the reasons set forth above, we conclude that the two offenses were not committed separately and were not committed with a separate animus or motivation. These findings remain pertinent under *Ruff*, which, as noted above, provides that offenses do not merge if "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25 [and] ¶ 30-31.

*Id.* at ¶ 54, quoting *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 51, 60 (2d Dist.).

{¶ 18} An appellate court applies a de novo standard of review in reviewing a trial

court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶ 19} As previously noted, Ropp was convicted in Count I of improper handling of firearms in a motor vehicle (transport of a loaded weapon), in violation of R.C. 2923.16, which states in relevant part:

(B) No person shall knowingly transport or have a loaded firearm in a motor

vehicle in such a manner that the firearm is accessible to the operator or

any passenger without leaving the vehicle.

{¶ 20} Ropp was also convicted in Count IV of discharge of a firearm on or near prohibited premises (discharge over a public road), in violation of R.C. 2923.162(A)(3)(C)(2), which states in relevant part:

(A) No person shall do any of the following:

* * *

(3) Discharge a firearm upon or over a public road or highway.

{¶ 21} Lastly, Ropp was convicted in Count V of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161(A)(1)(C), which states in relevant part:

(A) No person, without privilege to do so, shall knowingly do any of the

following:

(1) Discharge a firearm at or into an occupied structure that is a permanent or

temporary habitation of any individual[.]

{¶ 22} A similar issue was recently addressed by the Eighth District Court of Appeals in *State v. Jenkins*, 8th Dist. Cuyahoga No. 105881, 2018-Ohio-2397, wherein the court stated as follows:

Under *Ruff*, Jenkins's convictions under R.C. 2923.16 are not allied offenses of similar import because they were committed separately and with separate animus or motivation. Based on the evidence establishing that Jenkins fired a firearm from his vehicle, we can infer that Jenkins had a firearm that was loaded prior to his decision to shoot from inside of his vehicle in violation of R.C. 2923.16(B). The conduct and animus underlying that offense is different from the conduct and animus underlying his conviction under R.C. 2923.16(A), which Jenkins committed when he discharged that firearm while inside his vehicle. *Put simply, Jenkins made two separate decisions: first, to place a loaded firearm in his vehicle that he had access to and, second, to fire that firearm into a crowd while driving his vehicle. Those separate forms of conduct and motivations support the conclusion that Jenkins's convictions under R.C. 2923.16 are not allied offenses of similar import.*

(Emphasis added.) *Id.* at ¶ 66.

{¶ 23} Although the instant case differs from *Jenkins* insofar as R.C. 2923.16(A) is not involved in our calculus, both R.C. 2923.162(A)(3)(C)(2) and R.C. 2923.161(A)(1)(C) involve the discharge of a weapon, be it over a public roadway or into a habitation, respectively. Count I, however, only involves Ropp's separate initial decision to transport or have a loaded firearm in a motor vehicle in such a manner that the firearm was

accessible to the operator or any passenger without leaving the vehicle. R.C. 2923.16(B). The evidence adduced at trial established that Ropp possessed a loaded firearm in his vehicle prior to his decision to shoot from the inside of his vehicle. Accordingly, Ropp's conduct and animus in having a loaded, readily available firearm in his vehicle (Count I) is dissimilar and separate from his conduct in discharging the firearm across a public roadway and into a habitation (Counts IV and V). Therefore, Count I was not an allied offense of Counts IV and V and was not subject to merger with those counts.

{¶ 24} Upon review, we further conclude that Counts IV and V were not allied offenses subject to merger. The instant case is similar to *State v. Williams*, 2d Dist. Montgomery No. 27663, 2018-Ohio-1647. The defendant in that case fired multiple shots in rapid succession across the road with the singular motivation of killing a targeted victim. Thereafter, the defendant was convicted of murder and discharging a firearm on or near prohibited premises. On appeal, the defendant argued that these offenses should have been merged because the two offenses caused the same harm, namely, the death of the victim, and they constituted one action and were committed with the same animus. We found the two offenses to be of dissimilar import, citing the Eighth District Court of Appeals' opinion in *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 33 (8th Dist.) (the offense of discharging a firearm on a public road or highway is a strict liability offense and the victim is the public). We concluded that the trial court did not commit plain error when it failed to merge Williams's convictions for discharge of a firearm on or near prohibited premises with felony murder and/or felonious assault. We reasoned that the defendant's act of firing a gun across the roadway placed numerous people at risk and harmed the public at large, while his murder conviction involved harm to a particular

victim; therefore, the offenses differed in significance and the nature of the harm caused. *Id.* at ¶ 23-24.

{¶ 25} In *Williams*, we stated the following:

Williams was convicted and sentenced on one count of murder for causing Terion Dixon's death as a proximate result of committing felonious assault. He also was convicted and sentenced on one count of discharging a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), which provides: "No person shall do any of the following: * * * Discharge a firearm upon or over a public road or highway." Notably, "[t]he victim of the offense of discharging a firearm upon or over a public road or highway is the public. This is because it is the act itself that is prohibited. The offense can be completed with no one remotely near the location where the firearm is discharged upon or over the public road or highway. R.C. 2923.162(A)(3) is a statute intended to benefit the public good[.]" *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770 (8th Dist.), ¶ 33; *see also State v. Carzelle*, 8th Dist. Cuyahoga No. 105425, 2018-Ohio-92 (applying *James*). Although Williams actually shot and killed Dixon, his act of firing a handgun across the roadway itself violated the statute, placed numerous people at risk, and harmed the public at large. Conversely, his murder conviction required harm to a particular victim and differed in the significance and the nature of the harm it addressed. At a minimum, we believe the offenses at issue are dissimilar enough to preclude a finding of plain error. * * *

*Id.* at ¶ 24. Relying on our holding in *Williams*, we recently held in *State v. Shoecraft*, 2d

Dist. Montgomery No. 27860, 2018-Ohio-3920, ¶ 58, that the victim of improper discharge of a firearm on a roadway is the public at large.

{¶ 26} Based upon our holdings in *Williams* and *Shoecraft*, we find that Ervin and the other occupants of the house were the victims of Count V, improperly discharging a firearm at or into a habitation, and the public at large was the victim of the improper discharge offense in Count IV. Although Count V did not involve anyone actually being injured or killed, the same rationale applies here. Furthermore, similar to the defendants in both *Williams* and *Shoecraft*, Ropp's conduct placed other people at risk in addition to the individual(s) in Ervin's house. The evidence adduced in the instant case established that Ropp's "act of firing a handgun across the roadway itself violated the statute, placed numerous people at risk, and harmed the public at large." *Williams* at ¶ 24. Accordingly, we find that the trial court did not err in failing to merge the offenses for the purposes of sentencing.

{¶ 27} Ropp's first assignment of error is overruled.

{¶ 28} Because they are interrelated, Ropp's second and third assignments of error will be discussed together:

THE TRIAL COURT PREJUDICIALLY ERRED WHEN THE STATE OF OHIO FAILED TO PROVE EVEN A SINTILLA [sic] OF EVIDENCE THE SHOT WAS FIRED FROM A PUBLIC ROAD[,] AN ESSENTIAL ELEMENT OF R.C. 2923.162(A)(3). THEREFORE THE COURT SHOULD HAVE OF ITS OWN MOTION ACQUITTED WARREN SINCE THERE WAS NO EVIDENCE WARREN ROPP DISCHARGED A FIREARM OVER A PUBLIC ROAD OR HIGHWAY.

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. WARREN WHEN IT CONVICTED HIM IN SPITE OF THE STATE FAILED [sic] TO PROVE THE CHURCH WAS AN OCCUPIED STRUCTURE WHICH WAS THE TEMPORARY OR PERMANENT HABITATION OF GREGORY ERVIN AS REQUIRED PURSUANT TO R.C. 2923.161(A)(1)(C) AS IT STATED IN THE BILL OF PARTICULARS.

{¶ 29} In his second assignment, Ropp argues that the State adduced insufficient evidence to support his conviction for Count IV, discharge of a firearm on or near prohibited premises. Specifically, Ropp contends that the State failed to establish that the shooting occurred on a public road or that the roads leading to and around Ervin's residence were dedicated public roadways. In his third assignment, Ropp argues that the State failed to adduce any evidence that the renovated "house" across the street from Ervin's main residence was an occupied structure for the purposes of R.C. 2923.161(A)(1)(C).

{¶ 30} Initially, we note that the State argues that Ropp has waived all but plain error regarding his sufficiency argument because he failed to make a Crim.R. 29 motion for acquittal after the State rested its case and after the defense rested its case. In *State v. Hibbler*, 2d Dist. Clark No. 2001-CA-43, 2002-Ohio-4464, ¶ 23, we cited *State v. Roe*, 41 Ohio St.3d 18, 535 N.E.2d 1351 (1989) and *State v. Knapp*, 2d Dist. Montgomery No. 18457, 2001 WL 62519 (Jan. 26, 2001), for the general rule that, when a criminal defendant fails to make a Crim.R. 29 motion, the ability to challenge the sufficiency of the evidence on appeal is waived. However, in two apparently little-recognized cases, the Ohio Supreme court has held that a failure to timely file a Crim.R. 29(A) motion during a

jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. *See State v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001); *State v. Carter* , 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992). In both *Jones* and *Carter,* the Ohio Supreme Court stated that the defendant's "not guilty" plea preserved his right to object to the alleged insufficiency of the evidence. *Id.* Moreover, because "a conviction based on legally insufficient evidence constitutes a denial of due process," *State v. Thompkins* 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), a conviction based upon insufficient evidence would almost always amount to plain error. *See State v. Hermann,* 6th Dist. Erie No. E-01-039, 2002-Ohio-7307, ¶ 24; *State v. Casto,* 4th Dist. Washington No. 01CA25, 2002-Ohio-6255; *State v. Arrowood,* 4th Dist. Pike No. 93CA505, 1993 WL 386328, at *6 (Sept. 27, 1993).

{¶ 31} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 32} As previously stated, relative to the offense of discharging a firearm "on or near prohibited premises," R.C. 2923.162(A)(3) prohibits any person from "[d]ischarg[ing]

a firearm upon or over a public road or highway." If a violation of that provision "created a substantial risk of physical harm to any person," the offense is a third-degree felony. R.C. 2923.162(C)(2).

{¶ 33} In his second assignment of error, Warren Ropp claims that the State failed to prove "even a scintilla of evidence the shot was fired from a public road." He argues that there "was absolutely no conclusive proof Warren was on either street[,] Archer [Street] or Church Street[,] at the times [sic] the shots occurred," and that "he could have pulled the car onto the private property and fired at whatever he was shooting at from private property without crossing a public road or highway." The State's response is directed to whether there was sufficient evidence that Archer and Church Streets were "public roadways," not whether there was sufficient proof that Ropp discharged a firearm "upon or over" the roads. As worded, however, this assignment alleges that the State presented insufficient evidence not just as to the nature of the street, but as to whether he discharged a firearm "upon or over" the road.

{¶ 34} A defendant may be convicted based on direct evidence, circumstantial evidence, or both. *State v. Donley*, 2017-Ohio-562, 85 N.E.3d 324, ¶ 178 (2d Dist.). Circumstantial evidence has the same probative value as direct evidence. *Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 482, citing *State v. Nicely,* 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *State v. Bennett,* 2d Dist. Montgomery No. 24576, 2012-Ohio-194, ¶ 11. In fact, in some cases, "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence." *State v. Jackson*, 57 Ohio St.3d 29, 38, 565 N.E.2d 549 (1991).

{¶ 35} " 'A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence.' " *State v. Pounds*, 2d Dist. Montgomery No.

22469, 2008-Ohio-5384, ¶ 38, quoting *State v. Howland*, 12th Dist. Fayette No. 2006-08-035, 2008-Ohio-521, ¶ 32. "As long as the evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt, circumstantial evidence is sufficient to sustain a conviction." *State v. Whitehead*, 2d Dist. Montgomery No. 28334, 2019-Ohio-5141, ¶ 31, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75.

{¶ 36} To convict Ropp of discharging a firearm on or near prohibited premises in this case, the jury needed to find that Ropp discharged a firearm "upon or over" a public road. *See* R.C. 2923.162(A)(3). No one saw Ropp fire a gun. However, five witnesses were in the vicinity of Greg Ervin's house around the time of the shooting, and their testimony provided circumstantial evidence to support a reasonable inference that Ropp discharged a firearm from his vehicle upon or over a public roadway.

{¶ 37} Teenager Jonathan Jester was riding his bicycle "around Church and Archer Street" when he saw "the barrel of a rifle pointed out of" the driver's side window of a white Chevy Silverado driven by Ropp; the pick-up truck "was driving down Church and Archer" Tr. 271-275. Jester rode his bike home and heard a shot about a minute later. Reva Wright, who lived on the northwest corner of Church and Archer, testified that she was sitting on her back porch when she "heard a gunshot," "jumped up," and "stepped outside" within "10 seconds." Tr. 219-228. Upon stepping off her porch, she saw Ropp "really going slow," slowly ease into the intersection, pause, look toward Ervin's house, and then speed off. Tr. 223, 232. Wright's testimony indicated that Ropp drove south on Church Street, crossed Archer Street, and then continued on Church Street toward Kiser Lake Road. Tr. 238.

{¶ 38} Ervin and his friends, Chris and Stacey Longstreath, were at Ervin's primary residence on Archer Street when they heard a gunshot. Ervin stated that he was standing "right by the front door when it happened," and he stepped outside; the Longstreaths followed Ervin out the door. By the time Ervin got outside "a few seconds" after the shooting, the shooter had already left; neither Ervin nor the Longstreaths saw the shooter or any vehicle leaving the scene. However, the group saw Wright running up to them; Wright reported to them that Ropp had shot Ervin's pickup.

{¶ 39} Although there was no direct evidence that Ropp fired a gun from the public road, the evidence, viewed in the light most favorable to the State, indicated that Ropp drove slowly down Church Street with a rifle sticking out of the driver's window shortly before the shooting, that he fired at Ervin's house (located across the street from Ervin's primary residence), and then he sped off. Given that Ropp's vehicle had cleared the intersection of Church and Archer Streets and was not visible to Ervin and the Longstreaths mere seconds after the shooting, the jury could have reasonably concluded that Ropp had maintained his course along Church Street, a public roadway, when he shot at the house. Accordingly, the State adduced sufficient evidence to establish the public roadway element of R.C. 2923.162(A)(3) beyond a reasonable doubt.

### Occupied Structure

{¶ 40} Ropp also argues that the State failed to adduce sufficient evidence to establish that the renovated "house" across the street from Ervin's main residence was an occupied structure for the purposes of R.C. 2923.161(A)(1). As previously stated, R.C. 2923.161 provides: "(A) No person, without privilege to do so, shall knowingly do any of the following: (1) Discharge a firearm at or into an occupied structure that is a

permanent or temporary habitation of any individual."

{¶ 41} An "occupied structure" is defined in part in the Revised Code as follows: "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies: (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present." R.C. 2909.01(C).

{¶ 42} In *State v. Johnson*, 188 Ohio App.3d 438, 2010-Ohio-3345, 935 N.E.2d 895 (2d Dist.), we stated the following:

"A structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure 'maintained' as a dwelling within the meaning of R.C. 2909.01(A). That definition includes a dwelling house whose usual occupant is absent on a prolonged basis or is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant." *State v. Green* (1984), 18 Ohio App.3d 69, [480 N.E.2d 1128,] at paragraph one of the syllabus. " 'Under division (A) of the section, all dwellings are classed as occupied structures, regardless of the actual presence of any person. Whether or not the dwelling is used as a permanent or temporary home is immaterial, so long as it is maintained for that purpose.' " *State v. Bock* (1984), 16 Ohio App.3d 146, [474 N.E.2d 1228,] quoting R.C. 2909.01 Committee Comment. Even homes

undergoing major renovations have been found to be occupied structures.
*State v. Woodruff*, Lucas App. No. L-04-1125, 2005-Ohio-3368, at ¶ 7-8;
*State v. Charley*, Cuyahoga App. No. 82944, 2004-Ohio-3463, at ¶ 68-72
(owner was in nursing home, and house was empty and undergoing
renovation, but nonetheless it was an occupied structure); *Green*, 18 Ohio
App.3d at 71-72 (term "maintained" "alludes more to the character or type
of use for which the dwelling is intended to be subjected").

*Johnson* at ¶ 18.

{¶ 43} At trial, Ervin testified to the following regarding the renovated "house"
across the street from his main residence: 1) that it was sometimes used as part of his
living space; 2) that it was used by his family for gatherings at Thanksgiving and
Christmas; 3) that it had a table and a family room; 4) that it had indoor plumbing and two
bathrooms; 5) that it was furnished; 6) that it was finished with drywall and lighting; and
7) that it was used by visiting overnight houseguests. Ropp testified that the house also
had a pool table and a bar area.

{¶ 44} The mere fact that a residence has no actual tenant or owner living in it
does not establish that the structure is unoccupied within the meaning of the Revised
Code. *Johnson* at ¶ 20. There is nothing in the record that tends to show that the house
was being renovated for some use of a different character or type than as a residence.
*See Green*, 18 Ohio App.3d at 71-72, 480 N.E.2d 1128. Viewed in light most favorable
to the State, we conclude that sufficient evidence was adduced to establish that the
structure into which Ropp discharged a firearm was an occupied structure pursuant to
R.C. 2923.161(A)(1).

**{¶ 45}** Ropp's second and third assignments of error are overruled.

**{¶ 46}** Ropp's fourth assignment of error is as follows:

THE TRIAL COURT ERRED BECAUSE THE JURY VERDICT FORMS
WERE DEFECTIVE AS THEY DID NOT REFLECT THE STATUTORY
ELEMENTS OF THE CRIMES ALLEGED AND DID NOT ADEQUATELY
SET FORTH THE STATE'S BURDEN OF PROOF.

**{¶ 47}** In his fourth assignment, Ropp argues that the verdict forms were defective because they did not list all the statutory elements of the offenses to which they pertained. We note, however, that Ropp failed to object to the verdict forms at trial. Therefore, he has waived all but plain error with respect to this assignment of error.

**{¶ 48}** "There is no requirement that the statutory definition of an offense be included on the verdict form. To the contrary, the inclusion of statutory definitions on a verdict form 'invites confusion and error.' " *State v. Martin*, 2d Dist. Montgomery No. 22744, 2009-Ohio-5303, ¶ 8. Additionally, "there is no requirement that such [verdict] forms reiterate the burden of proof in the case." *State v. Mobley*, 2d Dist. Montgomery No. 9856, 1987 WL 12634, *3 (June 8, 1987). The record establishes that the parties discussed the State's burden of proof in their arguments before the jury. Furthermore, the trial court instructed the jury at length regarding the State's burden of proof and the elements of the offenses, and it provided an exhaustive definition of the reasonable doubt standard. Tr. 621-622.   Therefore, we conclude that the verdict forms were not defective.

**{¶ 49}** Ropp's fourth assignment of error is overruled.

**{¶ 50}** Ropp's fifth assignment of error is as follows:

THE TRIAL COURT ERRED TO THE PREJUDICE OF WARREN ROPP

WHEN IT FAILED TO MERGE THE FIREARM SPECIFICATION ON COUNT V AND INSTEAD RAN THE 3 AND 5 YEAR SPECIFICATIONS CONSECUTIVELY.

{¶ 51} In his fifth assignment, Ropp contends that the trial court erred when it failed to merge the three- and five-year firearm specifications attached to Count V, and instead ordered that the specifications be served consecutively. Ropp argues that that trial court should have run the sentences on the firearm specifications concurrently because they involved the same act or transaction.

{¶ 52} A trial court is required to impose a three-year prison sentence when the offender is convicted of displaying, brandishing, or using a firearm to facilitate the offense (R.C. 2941.145) and a five-year prison sentence when an offender is convicted of discharging a firearm from a motor vehicle (R.C. 2941.146).

{¶ 53} R.C. 2929.14(B)(1)(b) states, in relevant part, as follows:

If a court imposes a prison term on an offender under division (B)(1)(a) of this section, the prison term shall not be reduced pursuant to section 2967.19, section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

{¶ 54} R.C. 2929.14(B)(1)(c) provides that when a defendant is convicted of or pleads guilty to a violation of R.C. 2923.161 or a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical

harm to another, and also convicted of or pleads guilty to a specification of the type described in R.C. 2941.146, the court "*shall impose an additional prison term of five years.*" R.C. 2929.14(B)(1)(c). (Emphasis added.) This mandatory term is in addition to, and not an alternative to, any mandatory term that may also be imposed for the same offense pursuant to R.C. 2941.145. *See* R.C. 2929.14(B)(1)(c) ("If a court imposes an additional prison term on an offender under division (B)(1)(c) of this section relative to an offense [relating to specifications under R.C. 2941.146], the court also *shall impose* a prison term under division (B)(1)(a) of this section [relating to specifications under R.C. 2941.141, 2941.144, or 2941.145] relative to the same offense, provided the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense."). (Emphasis added). *See also State v. Gresham*, 8th Dist. Cuyahoga No. 81250, 2003-Ohio-744, ¶ 16.

{¶ 55} Further, R.C. 2929.14(C)(1)(a) provides:

[I]f both types of mandatory prison terms are imposed [under R.C. 2929.14(B)(1)(a) and (c)], the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division [and] * * * consecutively to and prior to any prison term imposed for the underlying felony * * *.

{¶ 56} Therefore, it is clear from the plain language of the statute that the legislature intended that the mandatory prison terms contained in R.C. 2941.145 and R.C. 2941.146 be served consecutively to one another and to the prison term for the underlying offense. *Gresham* at ¶ 16; *see also State v. Coffman*, 10th Dist. Franklin No. 09AP-727, 2010-Ohio-1995, ¶ 11, citing *State v. Bates*, 10th Dist. Franklin No. 03AP-893, 2004-

Ohio-4224, ¶ 8, 10 (interpreting former R.C. 2929.14(D)(1)(c) and finding that. if an offense is properly accompanied with a specification under R.C. 2941.146 and another under 2941.145, there is no merger of the specifications, and the court must impose a sentence for each),; *State v. Hudson*, 2d Dist. Montgomery No. 23328, 2010-Ohio-1622, ¶ 8 ("When firearm specifications under both R.C. 2941.145 and 2941.146 accompany the same offense and are both found true, a court must impose a 3-year term under R.C. 2929.14(D)(1)(a)(ii) and a 5-year term under R.C. 2929.14(D)(1)(c)."); *State v. Dixson*, 1st Dist. Hamilton No. C-030227, 2004-Ohio-2575, ¶ 39 (a defendant convicted of felonious assault and firearm specifications under R.C. 2941.141, 2941.145, and 2941.146 must be sentenced to mandatory, consecutive 3-year and 5-year prison terms for the firearm specifications); *State v. Walker*, 2d Dist. Montgomery No. 17678, 2000 WL 873222, *11 (June 30, 2000) (having found defendant guilty of a violation of R.C. 2923.161, the trial court imposed both a three-year mandatory prison term pursuant to the firearm specification in R.C. 2941.145, and a five-year mandatory prison term pursuant to the firearm specification in R.C. 2941.146; per R.C. 2929.14, "the Ohio legislature has clearly authorized the imposition of such cumulative punishments and thus the trial court did not commit error in failing to merge these two firearm specifications").

{¶ 57} In the instant case, Ropp was found guilty of the three-year and five-year firearm specifications under R.C. 2941.145 and R.C. 2941.146, governed by R.C. 2929.14(B)(1)(a) and (c), respectively, in connection with his conviction for Count V, improperly discharging a firearm at or into a habitation. In light of the foregoing, the trial court was precluded from merging the three-year and five-year firearm specifications pursuant to R.C. 2929.14(B)(1)(c) and(C)(1)(a).

{¶ 58} Ropp's fifth assignment of error is overruled.

{¶ 59} Ropp's sixth assignment of error is as follows:

THE IMPROPER HANDLING OF A FIREARM IN A MOTOR VEHICLE STATUTE (R.C. 2923.16(B)(1)) VIOLATES MR. ROPP'S SECOND AMENDMENT TO THE UNITED STATES CONSTITUTION RIGHT BOTH ON ITS FACE AND AS APPLIED. CONSEQUENTLY, THIS COURT SHOULD HOLD THE STATUTE UNCONSTITUTIONAL AND VACATE THE CONVICTION ON R.C. 2923.16(B)(1).

{¶ 60} In his sixth assignment, Ropp argues that R.C. 2923.16(B)(1) is unconstitutional as applied in the instant case and unconstitutional "because it inhibits his right to bear arms."

{¶ 61} Upon review, we find that Ropp waived his challenge to the constitutionality of R.C. 2923.16(B)(1) by failing to raise the issue at the trial court level. *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. While reviewing courts have discretion to consider a waived constitutional challenge to a statute, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, in exercising our discretion, we decline to consider the constitutionality of R.C. 2923.16(B)(1) for the first time on appeal.

{¶ 62} Nevertheless, even if Ropp's argument had not been waived, we have held that R.C. 2923.16(B) does not constitutionally infringe on an individual's right to bear arms. *State v. King*, 2d Dist. Montgomery No. 24141, 2011-Ohio-3417, ¶ 25. In *King*, the defendant was convicted of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B)(1), which states: "No person shall knowingly transport or

have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." In *King,* we reasoned that R.C. 2923.16(B) did not prohibit the transportation of all guns in a motor vehicle. "Instead, the statute limits an individual's right to transport a loaded gun within reach of the driver or any passenger. These limits are both appropriate and reasonable." *Id.* at ¶ 23. If Ropp's argument were properly before us, the same rationale we set forth in *King* would apply here.

{¶ 63} Ropp's sixth assignment of error is overruled.

{¶ 64} Ropp's seventh and final assignment of error is as follows:

TRIAL COUNSEL WAS INEFFECTIVE COUNSEL TO THE PREJUDICE OF MR. ROPP SO AS THE TRIAL WAS UNFAIR. THE CONVICTIONS AND SENTENCES FOR ALL COUNTS SHOULD BE OVERTURNED.

{¶ 65} In his final assignment, Ropp argues that he received ineffective assistance of counsel based upon the following actions taken by his trial counsel: 1) the decision to stipulate to the gunshot residue report; 2) the failure to object to the characterization of a metal fragment recovered from Ervin's other "house" as a bullet without proper analysis; 3) the failure to object to the "defective verdict forms regarding guilt;" 4) the failure to object to the jury instruction regarding public roads; 5) the failure to argue in closing that the road where the shooting occurred was not public; 6) the failure to make a Crim.R. 29 motion for acquittal at the close of the State case and at the close of the defense case; 7) the failure to argue that R.C. 2923.16(B)(1) was unconstitutional; and 8) an inadequate cross-examination of Jonathan Jester.

{¶ 66} We review the alleged instances of ineffective assistance of trial counsel

under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. "To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. * * * " *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 67} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland.* A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 68} Initially, we note that defense counsel's decision to stipulate to the gunshot

residue report did not amount to ineffective assistance because the report would have been admissible evidence regardless of the stipulation. Defense counsel's decision to enter into the stipulation was a "tactical decision" that fell " 'within the wide range of reasonable professional assistance.' " *State v. Green*, 66 Ohio St.3d 141, 148, 609 N.E.2d 1253 (1993), quoting *Strickland* at 689. Furthermore, the stipulation was ostensibly part of a reasonable trial strategy to bolster Ropp's credibility, so that the jury would focus on his testimony denying his involvement in the charged offenses. Specifically, Ropp testified at trial that he, his father, and his son had been shooting rifles from inside the vehicle on the day before the shooting at Ervin's property, thereby explaining the presence of gunshot residue on Ropp's person.

{¶ 69} With respect to counsel's failure to object to the characterization of the metal fragment as a bullet, it also did not amount to ineffective assistance. At trial, it was basically undisputed that someone discharged a firearm near Ervin's residence and vehicles. Ropp's defense at trial was that, although he was initially present on Ervin's property when Ervin arrived home on the morning of August 21, 2017, he did not return to the scene of the shooting after leaving the first time and was therefore not the shooter. Since Ropp claimed that he was not the shooter, he was not prejudiced by the State's characterization of the metal fragment as a bullet.

{¶ 70} Having already found that the verdict forms issued by the trial court and signed by the jurors were not defective, counsel's failure to object to the forms it did not amount to ineffective assistance.

{¶ 71} We also find that counsel did not render ineffective assistance when he failed to object to the trial court's jury instruction regarding public roads. The definition

used in the jury instructions contained standard Ohio Jury Instruction language and was otherwise proper. Furthermore, other than referring to the public road instruction as "faulty," Ropp provides no explanation regarding why the instruction was improper.

**{¶ 72}** Further, defense counsel was not ineffective for failing to argue in closing that the road where the shooting occurred was not public. At trial, evidence was adduced that Ervin's residences were located on Archer Street, a roadway used by the public in Rosewood, Ohio. In our view, it would have been a futile act for defense counsel to argue in closing that Archer Street was not a public road. Furthermore, Ropp's defense at trial was that he was not the shooter, so whether the shooting occurred on a public road was not critical to his defense.

**{¶ 73}** We also conclude that the failure of defense counsel to make a Crim.R. 29 motion at trial did not amount to ineffective assistance. There was no reasonable possibility that a Crim.R. 29 motion would have made any difference. Crim.R. 29(A) states that a court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction" for the charged offense. On this record, the failure to make Crim.R. 29 motions was not prejudicial, because there was sufficient evidence of the crimes charged. In the absence of prejudice, an ineffective assistance of counsel argument is without merit.

**{¶ 74}** We further find that counsel was not ineffective in not filing a motion or arguing in the trial court that R.C. 2923.16(B)(1) was unconstitutional. In our analysis of Ropp's sixth assignment of error, we noted that R.C. 2923.16(B)(1) does not constitutionally infringe on an individual's right to bear arms. *King,* 2d Dist. Montgomery No. 24141, 2011-Ohio-3417, at ¶ 25. Therefore, it would have been a futile act for

defense counsel to argue the unconstitutionality of R.C. 2923.16(B)(1).

{¶ 75} As previously stated, Jonathan Jester testified that while riding his bicycle on Church Street and Archer Street near where Ervin lived, he observed Ropp driving a white Chevy pickup truck and pointing a rifle out of the driver's side window. Jester testified that he had known Ropp for a few years prior to the shooting. Jester also testified that his father had gone to school with Ropp. Upon seeing the barrel of the rifle pointing out of the window of the truck, Jester quickly left the scene and went back to his nearby residence. Jester testified that shortly after arriving at his house, he heard a gunshot.

{¶ 76} Upon review, we conclude that defense counsel's cross-examination of Jester was more than adequate. The record establishes that defense counsel was able to elicit from Jester where he first observed Ropp prior to the shooting. Defense counsel also elicited where Jester was in relation to Ropp and how Jester was able to identify Ropp through the rear window of the truck. There were no apparent inconsistencies in Jester's testimony, and further cross-examination of Jester regarding his exact location when he observed Ropp on the morning of the shooting would not have made much difference.

{¶ 77} The extent and scope of cross-examination clearly falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *State v. White*, 2d Dist. Montgomery No. 26093, 2005-Ohio-3150, ¶ 63. We cannot say that defense counsel's cross-examination of Jester was objectively unreasonable.

{¶ 78} Ropp's seventh and final assignment of error is overruled.

{¶ 79} In light of the foregoing, this matter is remanded for the limited purpose of

the issuance of a nunc pro tunc entry to reflect that Count IV was a felony of the third degree.   In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurs.

HALL, J., concurs:

{¶ 80} I concur with the resolution of this case. I write separately in regard to paragraph 30, which references "two apparently little-recognized cases" in support of the idea that failure to raise a Crim.R. 29 motion at trial does not waive ordinary appellate review of a sufficiency-of-the-evidence challenge. In my opinion, those cases are "little-recognized" because they should not be used to support the premise, despite the fact that several districts have quoted and analyzed them in regard to waiver of a sufficiency of the evidence argument by failing to raise a Crim.R. 29 motion at trial. Rather, I believe we should adhere to the time-honored notion that failure to make a Crim.R. 29 motion in a jury trial waives sufficiency review on appeal except for plain error. *State v. Roe,* 41 Ohio St.3d 18, 25, 535 N.E.2d 1351 (1989); *Dayton v. Rogers*, 60 Ohio St.2d 162, 163, 398 N.E.2d 781 (1979).[1] Neither of these cases has been expressly overruled, and until they are I think they should be followed.

{¶ 81} The "little-recognized" cases are *Jones*, 91 Ohio St.3d 335, 744 N.E.2d 1163 and *Carter,* 64 Ohio St.3d 218, 594 N.E.2d 595. *Jones* cites *Carter* for the proposition that "Appellant's 'not guilty' plea preserved his right to object to the alleged

---

[1] *Rogers* was overruled on other grounds by *State v. Lazzaro*, 76 Ohio St.3d 261, 667 N.E.2d 384 (1996).

insufficiency of the evidence proving the prior offense." *Jones* at 346, citing *Carter* at 223. It appears the initial "two apparently little-recognized cases" iteration is found in *State v. Coe*, 153 Ohio App.3d 44, 2003-Ohio-2732, 790 N.E.2d 1222, ¶ 19 (4th Dist.). The "apparently little-recognized" phrase and the cited cases have since been addressed in at least nine cases in the Fourth District and in three other districts. Because *Jones* relies on, and cites to, *Carter, Carter* is where to start.

{¶ 82} Clarence Carter had been found guilty of a prior aggravated murder on December 9, 1988 and was awaiting sentencing in the Hamilton County jail. On December 28, Carter struck and kicked fellow inmate Johnny Allen multiple times, necessitating Allen's hospitalization. On January 5, 1989, Carter was sentenced to life imprisonment for the original aggravated murder. On January 11, 1989, Allen died as a result of Carter's assault. Carter was then convicted of Allen's aggravated murder with death penalty specifications. The second death penalty specification alleged a prior conviction for murder: "[p]rior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of * * * another * * *." That specification was tried to the court and not the jury.

{¶ 83} On appeal, Carter argued that his first conviction was not final until he was sentenced on January 5, which was after he beat Johnny Allen, so he did not have a *prior* conviction. The Ohio Supreme Court agreed that the first conviction was not final until January 5. But it also concluded that the finding of a prior conviction was appropriate because Allen did not die until January 11, and the subsequent aggravated murder charge had not matured and had not existed until Allen's death. Consequently, the date of the beating was not dispositive of whether there was a prior murder conviction. It was

the date of death that mattered.

{¶ 84} In *Carter,* there was no mention of whether a Crim.R. 29 motion was made either at the close of the State's case or after all the evidence. A reading of the court of appeals' decision in the case reveals trial counsel most likely did not raise the prior-conviction issue at trial because an ineffective-assistance-of-counsel assignment of error addressing that error of counsel had been raised. *State v. Carter,* 1st Dist. Hamilton No. C-890513, 1991 WL 17218, *3 (Feb. 13, 1991). In the Ohio Supreme Court, the terse reference to waiver of the date of the prior-offense issue was as follows: "We find waiver inapplicable even though counsel failed to raise this point at trial. Carter's not guilty plea preserved his right to object to the alleged insufficiency of the evidence proving this prior conviction." *Carter,* 64 Ohio St.3d at 223.

{¶ 85} In *Jones,* 91 Ohio St.3d 335, 744 N.E.2d 1163, Odraye G. Jones was wanted for aggravated robbery. A week before his capture, he told his cousin that he "was going to shoot at the police if they ever tried to arrest him." *Id.* at 335. Ashtabula police officer William Glover found Jones and beckoned to him. Jones fled and Glover chased. Jones fired shots at Glover, who fell to the ground. Jones continued to flee but then returned where Glover was lying and kicked him with such force it left a large bruise on his chest. In a short while, Jones was apprehended by other officers. Glover had gunshot wounds to the top of his head, just below his right eye, and his shoulder. He died the next morning.

{¶ 86} Jones was charged with the aggravated murder of Glover with prior calculation and design, including four death specifications. Two of the specifications, one for killing for the purpose of escaping apprehension for his earlier aggravated robbery

offense and the second for knowingly and purposefully causing the death of a law-enforcement officer, were submitted to the jury, which recommended death. The trial court concurred.

{¶ 87} On appeal, it appears that Jones' defense expanded a sufficiency argument it apparently had made at trial, on other grounds, to include whether the specification that the murder was committed for the purpose of escaping apprehension for another offense committed by the offender must include proof that the other prior offense was in fact committed. The State maintained that Jones had waived that issue by failing to raise it at trial. Citing *Carter*, the Ohio Supreme Court disagreed, finding that Jones's not-guilty plea preserved his right to object to the alleged insufficiency of the evidence proving the prior offense. *Id.* at 346. The *Jones* court then determined that there was sufficient evidence presented to conclude that Jones had committed the prior aggravated robbery for which he was wanted. His conviction and death penalty were affirmed.

{¶ 88} I find it interesting to note that *Carter*, in which the death-penalty specification challenged on appeal was tried to the court, is consistent with the Ohio Supreme Court's prior holding in *Dayton v. Rogers*, 60 Ohio St.2d 162, 398 N.E.2d 781, above, in which the court addressed the necessity of a Crim.R. 29 motion as follows:

> The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence. See the following cases decided under the analogous Fed.R.Crim.P. 29:

> *Hall v. United States* (C.A.5, 1961), 286 F.2d 676, 677, certiorari denied, 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236; *United States v. Besase* (C.A.6, 1967), 373 F.2d 120, 121; *United States v. Pitts* (C.A.5, 1970), 428 F.2d 534, 535, certiorari denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149. See also, 8A Moore's Federal Practice, Paragraphs 29.01 et seq.

*Id.* at 163.

{¶ 89} In light of *Rogers* and the specific circumstances of *Carter,* the holding of *Carter* is that a Crim.R. 29 motion is not necessary to raise on appeal an issue *that was tried to the court.* Therefore, the *Jones* citation to *Carter,* for the proposition that a Crim.R. 29 motion is not necessary to preserve a sufficiency-of-the-evidence argument on appeal, without analysis and without reference to *Rogers*, is a misstep in a jury-trial analysis. In addition, despite the *Jones/Carter* citations, eight of Ohio's appellate districts, including the Second District, continue to cite *Rogers* as authority for the proposition that failure to make a Crim.R. 29 motion at jury trial waives a sufficiency challenge on appeal except for plain error review.[2]

{¶ 90} In my opinion, the determining rationale for following *Dayton v. Rogers* and requiring a Crim.R. 29 motion before a case is submitted to a jury to preserve a sufficiency argument on appeal (except for plain error) is that process matters. If sufficiency can be raised at any time, under any circumstances, then Crim.R. 29, and particularly section (A) of that rule, which provides "[t]he court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case," would have no purpose and no

---

[2] For a collection of such cases, see *State v. Hardman*, 2016-Ohio-498, 56 N.E.3d 381, ¶ 34 (8th Dist.).

meaning. Moreover, addressing issues in the trial court is fundamental for perhaps having the record clarified or for allowing the State to request re-opening to solidify a technical inadequacy. If making a Crim.R. 29 motion at trial does not matter, then trial practice education would shift to a recommendation that a Crim.R. 29 motion should *never* be made for fear that a record could be clarified or corrected, or the trial court might allow re-opening, rather than raising an error for the first time on appeal after the horse is out of the barn. Finally, with respect to analogous Fed. R. Civ. P. 29, federal courts consistently have held the failure to make a motion for judgment of acquittal at trial waives a sufficiency challenge on appeal except for "manifest miscarriage of justice." *See, e.g.*, *U.S. v. Tragas*, 727 F.3d 610, 617-618 (6th Cir.2013). That is similar to the plain-error review that I believe should apply in Ohio when no Crim.R. 29 motion is made in a jury trial.

Copies sent to:

Jane A. Napier
Richard L. Kaplan
Hon. Nick A. Selvaggio