The STATE of Ohio, Appellee,

v.

JOHNSON, Appellant.

[Cite as *State v. Johnson,* 188 Ohio App.3d 438, 2010-Ohio-3345.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23866.

Decided July 16, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Laura M. Woodruff, Assistant Prosecuting Attorney, for appellee.

Robert Alan Brenner, for appellant.

KLINE, Judge.

{¶ 1} Marvin Johnson appeals his conviction for breaking and entering in violation of R.C. 2911.13(A). Johnson, among other arguments, contends that his conviction is not supported by sufficient evidence. We agree. However, we find that the evidence does support a conviction for the lesser included offense of criminal trespassing in violation of R.C. 2911.21. We therefore reverse the judgment of the trial court, and we order the trial court to modify its judgment to indicate that Johnson was convicted of criminal trespassing. We remand this case to the trial court for resentencing.

I

{¶ 2} Officer Joshua Frisby, a police officer working for the Dayton Police Department, came on duty around midnight on the morning of October 5, 2009. Shortly after he left the police station, he heard a house alarm in the general

vicinity. Frisby then proceeded to drive slowly through the neighborhood, attempting to pinpoint the source of the alarm.

{¶ 3} Within a short period of time, Frisby identified the source of the alarm as 149 Grafton Avenue. About the same time as Frisby discovered this, he also observed Johnson carrying a box and walking quickly away from 149 Grafton Avenue. Frisby called for backup, illuminated Johnson with a spotlight on his police car, identified himself, and approached Johnson.

{¶ 4} At this point, Johnson dropped the box he was carrying and started to run. Frisby chased Johnson for about 50 to 75 yards before he caught him. Frisby then arrested Johnson and escorted him back to his police car. The record demonstrated that the box contained a demolition hammer. By the time Frisby had returned, his backup had also arrived. Frisby placed Johnson in one of the police cruisers. Within a short period of time, Frisby gave Johnson warnings pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Johnson waived his rights and agreed to speak. Johnson then admitted that he was going to pawn the tool he was carrying in order to purchase drugs.

{¶ 5} Roger Wattendorf, the owner of 149 Grafton Avenue, testified that the house was undergoing renovations at the time of the break-in. There were no alarms in the windows of the house. Instead, the only alarms were based on motion detectors. Wattendorf identified the demolition hammer Johnson carried as Wattendorf's property. Wattendorf also testified that the house was unoccupied, but that he was there most days to work on the renovations. Wattendorf's wife, Sandra Hill, stated that she was at the house about once a week. Wattendorf and Hill were out of town at the time of the break-in.

{¶ 6} Wattendorf employed Cory Bialke as a carpenter to complete the renovations. When Bialke arrived on Monday morning, he found that one of the windows of the home had been broken. He also found a chunk of cement near the broken window inside the house. Bialke also noticed that Wattendorf's tools had been moved and placed in piles. Finally, Bialke testified that he had been working on the 149 Grafton Avenue project for about two months.

{¶ 7} After a jury trial, the jury convicted Johnson of breaking and entering in violation of R.C. 2911.13(A). Johnson appeals and assigns the following errors for our review:

First Assignment of Error

{¶ 8} "Marvin Johnson was convicted on insufficient evidence."

Second Assignment of Error

{¶ 9} "The trial court committed plain error by failing to instruct the jury on what constitutes an 'unoccupied structure' in violation of Marvin Johnson's right to due process and a fair trial under the Constitutions of Ohio and the United States."

Third Assignment of Error

{¶ 10} "Marvin Johnson was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution."

Fourth Assignment of Error

{¶ 11} "The trial court erred in ordering Marvin Johnson to pay restitution in violation of R.C. 2929.19(B)(6)."

## II

{¶ 12} Johnson first contends that his conviction was supported by insufficient evidence.

{¶ 13} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See also *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 14} This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Rather, this test "gives full play to the responsibility of the trier of fact * * * to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 79–80, 24 O.O.3d 150, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 15} Specifically, Johnson contends that the state failed to present sufficient evidence to demonstrate that the structure broken into was "unoccupied." Johnson was convicted of breaking and entering in violation of R.C. 2911.13(A). This

statute provides that "[n]o person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony." R.C. 2911.13(A).

{¶ 16} As Johnson notes, the fact that a structure is unoccupied is an essential element of the offense. *State v. Talley* (1985), 18 Ohio St.3d 152, 155–156, 18 OBR 210, 480 N.E.2d 439. Unfortunately, the Revised Code does not provide a definition of "unoccupied." *State v. Carroll* (1980), 62 Ohio St.2d 313, 314, 16 O.O.3d 359, 405 N.E.2d 305. The Code, however, does define an occupied structure. R.C. 2909.01(C). Under the Code, breaking and entering is a fifth-degree felony, whereas burglary involving the trespass of an occupied structure is a third-degree felony. R.C. 2911.12(A)(3) and (C); see also R.C. 2911.13, Legislative Service Commission note ("This section defines an offense identical to burglary, except that the structure involved in a violation of this section is unoccupied rather than occupied"). The legislature reasonably decided to punish trespass of an occupied structure more harshly because of the risk of personal harm to the occupants. *Carroll,* 62 Ohio St.2d at 314–315, 16 O.O.3d 359, 405 N.E.2d 305. "Proof that the structure is unoccupied is diametrically opposed to proof of occupancy." *State v. Beasley* (June 1, 1998), Stark App. No. 1997CA00423, 1998 WL 351449.

{¶ 17} An "occupied structure" is defined in the Code as follows: "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies: (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present." R.C. 2909.01(C).

{¶ 18} "A structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure 'maintained' as a dwelling within the meaning of R.C. 2909.01(A). That definition includes a dwelling house whose usual occupant is absent on a prolonged basis or is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant." *State v. Green* (1984), 18 Ohio App.3d 69, 18 OBR 234, 480 N.E.2d 1128, at paragraph one of the syllabus. " 'Under division (A) of the section, all dwellings are classed as occupied structures, regardless of the actual presence of any person. Whether or not the dwelling is used as a permanent or temporary home is immaterial, so long as it is maintained for that purpose.' " *State v. Bock* (1984), 16 Ohio App.3d 146, 16 OBR 154, 474 N.E.2d 1228, quoting R.C. 2909.01 Committee Comment. Even homes undergoing major renovations have been found to be occupied structures. *State v. Woodruff,* Lucas App. No. L–04–1125, 2005-Ohio-3368, 2005

WL 1532611, at ¶ 7–8; *State v. Charley,* Cuyahoga App. No. 82944, 2004-Ohio-3463, 2004 WL 1472745, at ¶ 68–72 (owner was in nursing home, and house was empty and undergoing renovation, but nonetheless it was an occupied structure); *Green,* 18 Ohio App.3d at 71–72, 18 OBR 234, 480 N.E.2d˙ 1128 (term "maintained" "alludes more to the character or type of use for which the dwelling is intended to be subjected").

{¶ 19} Here the evidence tended to show that the structure was a residential house, a single-family two-story residence in a craftsman style with three bedrooms. The owners did not reside on the premises, nor did anyone else. The house was currently undergoing substantial renovations and was fairly empty of furniture. The nature of the renovations is not entirely clear. Hill testified that she cleaned an oven, so whatever the nature of the renovations was, the owners did not remove the appliances. Bialke testified that he had previously worked for Wattendorf renovating other houses.

{¶ 20} Wattendorf testified on the stand that the house was unoccupied. Bialke also testified that the house was unoccupied after he and his assistant left. But both of these statements, in context, reflect opinions rooted in the ordinary understanding of the term "unoccupied." However, "unoccupied" in the terms of the Revised Code is related to "occupied." And the definition of "occupied" in the Revised Code is far broader than in ordinary usage. Under *Beasley,* this necessarily limits the scope of "unoccupied" more than in ordinary usage. The mere fact that a residence has no actual tenant or owner living in it does not establish that the structure is unoccupied within the meaning of the Revised Code. There is nothing in the record that tends to show that the house is being renovated for some use of a different character or type other than as a residence. See *Green,* 18 Ohio App.3d at 71–72, 18 OBR 234, 480 N.E.2d 1128. Therefore, we find that there is insufficient evidence to conclude that the house was unoccupied.

{¶ 21} We therefore sustain Johnson's first assignment of error. This renders Johnson's remaining assignments of error moot, and we decline to address them. App.R. 12(A)(1)(c). We therefore vacate Johnson's conviction for breaking and entering under R.C. 2911.13(A).

■ {¶ 22} When a "verdict is not sustained by sufficient evidence or is contrary to law; but if the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial." R.C. 2945.79(D). See also *State v. Esherick* (1969), 19 Ohio App.2d 40, 48 O.O.2d 35, 249 N.E.2d 78, at paragraph one of the syllabus; *State v. Frazier,* Franklin App. No. 05AP–1323, 2007-Ohio-11, 2007 WL 16778, at ¶ 28–29; *State v. Davis* (Dec. 18, 1997),

Cuyahoga App. No. 71853, 1997 WL 781855. "Criminal trespass, under R.C. 2911.21, is a lesser included offense of breaking and entering, under R.C. 2911.13." *State v. Murphy* (1983), 9 Ohio App.3d 248, 9 OBR 422, 459 N.E.2d 607, syllabus. The evidence on which the jury below found Johnson guilty of breaking and entering would clearly establish criminal trespassing under R.C. 2911.21. Johnson in fact contests only the element of an "unoccupied structure" on appeal. We therefore reverse the judgment and remand this cause to the trial court. On remand, we order the trial court to (1) modify its judgment to show that Johnson is guilty of criminal trespassing under R.C. 2911.21 and (2) resentence Johnson accordingly.

{¶ 23} The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

Donovan, P.J., and Fain, J., concur.

Roger L. Kline, J., of the Fourth Appellate District, sitting by assignment.

Fain, Judge, concurring.

{¶ 24} I concur fully in Judge Kline's thoughtful opinion for the court.

{¶ 25} I write separately only to note the unsatisfactory result in this case and to recommend a legislative solution for the General Assembly's consideration.

{¶ 26} R.C. 2911.13(A), proscribing the offense with which Johnson is charged, provides as follows:

{¶ 27} "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."

{¶ 28} The Legislative Service Commission's comment, in 1973, concerning this section is as follows:

{¶ 29} "This section defines an offense identical to burglary, except that the structure involved in a violation of this section is unoccupied rather than occupied."

{¶ 30} Actually, as the breaking-and-entering and burglary statutes are presently worded, there is one other difference. Breaking and entering requires the purpose to commit a felony or a theft offense, whereas burglary requires the purpose to commit any criminal offense. Thus, one who trespasses in an occupied structure by means of force, stealth, or deception, with the purpose to commit a misdemeanor offense other than a theft offense, is guilty of burglary, while one who trespasses in an unoccupied structure with the same intent is not

guilty of breaking and entering. With this one exception, the offenses are identical except for the nature of the structure in which the trespass occurs.

{¶ 31} Obviously, a structure is either occupied or it is unoccupied. But because the offenses of burglary and breaking and entering are separately defined, the fact that the structure involved is unoccupied becomes an essential element of breaking and entering that the state is required to prove beyond a reasonable doubt. The unfortunate consequence is that the ambiguous nature of the structure involved may leave the state in a position where it is unable to prove, beyond reasonable doubt, that the structure is occupied, but it is also unable to prove, beyond a reasonable doubt, that the structure is unoccupied. This, despite the indisputable fact that the structure must be one or the other.

{¶ 32} So, in a situation like the one before us, where there is sufficient evidence to prove that a defendant has used force, stealth, or deception to trespass in a structure, with a purpose to commit a felony or a theft offense, he cannot be convicted of either burglary or breaking and entering, despite the fact that he has necessarily committed one or the other of those offenses.

{¶ 33} It would seem to me that the General Assembly could avoid this unsatisfactory situation by eliminating the word "unoccupied" from the phrase "unoccupied structure" in R.C. 2911.13(A). Thus, one who uses force, stealth, or deception to trespass in a structure, for the purpose of committing therein a felony or a theft offense, will necessarily be guilty of breaking and entering, and if the structure is occupied, the offender will be guilty of the greater offense of burglary.

{¶ 34} The only problem with this fix is an allied-offenses-of-similar-import problem. If the breaking-and-entering offense were reworded in the manner I have suggested, it would not actually be a lesser included offense of Burglary. This is because it would be possible to commit burglary without committing breaking and entering, if the offender's purpose were to commit upon the premises a misdemeanor offense other than a theft offense. Thus, under a strict allied-offenses-of-similar-import analysis, one who uses force, stealth, or deception to trespass in an occupied structure, with a purpose to commit a felony or a theft offense therein, could be convicted of both burglary and breaking and entering, if the statute proscribing the latter were to be amended in the manner suggested.

{¶ 35} If this problem were deemed serious enough to require a legislative fix, the General Assembly could either broaden the purpose requirement in the breaking-and-entering statute to include a purpose to commit any criminal offense, so it would then be a lesser included offense of burglary, or narrow the purpose requirement in the burglary statute to mirror the purpose requirement

in the breaking-and-entering statute, so that breaking and entering would again become a lesser included offense of burglary.