**[Cite as *State v. Steen*, 2020-Ohio-4598.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-63 |
| | : | |
| DAVID E. STEEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 25th day of September, 2020.

. . . . . . . . . . .

DEBORAH S. QUIGLEY, Atty. Reg. No. 0055455, Assistant Prosecuting Attorney, Darke County Prosecutor's Office, 504 South Broadway Street, Greenville, Ohio 45331
    Attorney for Plaintiff-Appellee

ALEXANDER S. PENDL, Atty. Reg. No. 0093792, 121 West Third Street, Greenville, Ohio 45331
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, David E. Steen, appeals from his conviction in the Darke County Court of Common Pleas after a jury found him guilty of one count of burglary. In support of his appeal, Steen contends that the jury's verdict was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons outlined below, Steen's conviction will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On March 29, 2019, a Darke County grand jury returned an indictment charging Steen with one count of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree, and one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree. The charges stemmed from allegations that sometime between October 5, 2018, and October 11, 2018, Steen entered a residence on Ohio Indiana State Line Road in Union City, Darke County, Ohio, and took property from the residence without the owner's permission.

{¶ 3} On October 2 and 3, 2019, the matter proceeded to a jury trial. Following trial, the jury returned a verdict finding Steen guilty of burglary, but not guilty of theft. Thereafter, the trial court sentenced Steen to 24 months in prison and ordered Steen to pay court costs. Steen then filed a timely notice appeal from his conviction.

{¶ 4} Due to a malfunctioning of the trial court's recording equipment, a transcript of Steen's trial could not be produced for his appeal. In lieu of a transcript, the parties agreed to file a joint statement of the evidence/proceedings as permitted by App.R. 9(C). The parties filed the joint statement on January 16, 2020, and it was approved by the trial court on January 23, 2020. The joint statement indicated that the following testimony

and evidence was presented at Steen's trial.

{¶ 5} Michael Pearcy, the owner of the burglarized residence, testified that on April 9, 2018, he vacated the residence and moved to Florida for his job. Pearcy also testified that he left many of his belongings at the residence and returned to the residence intermittently. According to Pearcy, over $10,000 worth of his belongings were stolen from the residence while he was in Florida. Pearcy testified that a washer, dryer, and a coffee table were some of the items taken from his residence. Pearcy authenticated several photographs of the stolen property at trial. *See* State's Exhibit Nos. 49-53, and 59. Pearcy testified that no one had permission to enter his residence and take his property. This included Steen, whom Pearcy testified worked for a company that Pearcy did business with before he moved to Florida.

{¶ 6} Pearcy's son, Noah Pearcy, also testified at trial. Noah testified that he had lived at the burglarized residence up until he left for college in August 2017. Noah testified that after his father moved to Florida, he would return to the residence on the weekends to check on the property. Noah also testified that his father's friend, Norah Wiley, looked after the property. According to Noah, no one was living at the residence in October 2018.

{¶ 7} With regard to the burglary, Noah testified that he was at the residence on October 5, 2018, and that nothing was out of order at that time. Noah testified that when he returned to the residence on October 11, 2018, he discovered that the residence had been burglarized; Noah contacted Wiley and the Darke County Sheriff's Office. Noah testified that he gave surveillance video footage taken from outside the residence to Sheriff's Deputy Colton Magel. According to Noah, the video footage was only visible

during the daylight hours and Steen was not shown on the visible portion of the footage. Noah further testified that he did not give anyone permission to be at the residence in October 2018.

{¶ 8} Pearcy's friend, Wiley, also testified at trial. Wiley testified that she began looking after Pearcy's residence when Pearcy moved to Florida for his job. Wiley confirmed that she did not live at the residence and that Pearcy intermittently returned to the residence when his job permitted. Wiley testified that after she became responsible for watching the residence, she videoed the interior of the residence on September 5, 2018, for a ghost hunters visit. The video taken by Wiley was played for the jury and admitted at trial. *See* State's Exhibit No. 58. During the video, Pearcy's coffee table was pointed out in one of the bedrooms.

{¶ 9} Wiley testified that on October 11, 2018, she received a call from Noah who advised her that someone had burglarized Pearcy's residence. Wiley testified that she instructed Noah to contact law enforcement and then went to the residence where she met up with Noah and Dep. Magel. Wiley testified that she and Noah went through the residence to assess the damage and to determine what property had been taken. During that time, Wiley took another video recording of the residence, which was shown to the jury and admitted into evidence. *See* State's Exhibit 58. Wiley also authenticated several photographs of the residence after it was burglarized. *See* State's Exhibits 1-48. Wiley testified that she did not give anyone permission to be at the residence or to take any of Pearcy's belongings.

{¶ 10} Dep. Magel also testified at trial. Dep. Magel testified that on October 11, 2018, he was dispatched to the residence in question where he met Noah Pearcy and

Norah Wiley. Dep. Magel testified that during his investigation, he located a broken window at the rear, south-end of the residence. Dep. Magel testified that he believed the broken window was the initial point of entry for the burglary. Dep. Magel also testified that he took photographs of the scene, which were admitted into evidence at trial. *See* State's Exhibit 1-48.

{¶ 11} Dep. Magel further testified that Noah had provided him with some surveillance video footage taken outside the residence. Dep. Magel testified that the video footage showed some individuals at the residence during the daylight hours. Dep. Magel also testified that the video footage showed many shadows of people and vehicles at the residence during the night-time hours on different nights prior to October 11, 2018. Dep. Magel testified that Steen was not visible in any of the video footage.

{¶ 12} Steen's neighbor, Mykala Purdin, also testified at trial. Mykala testified that her husband, Anthony Purdin, had been identified on the surveillance video and was charged with burglarizing Pearcy's residence. Mykala testified that sometime between October 12, 2018, and October 22, 2018, she secretly audio-recorded a conversation between herself, Steen, Casey Fancil, and Dino Purdin. Mykala testified that her husband was also present during the conversation, but that he was hiding from Steen and the others. Mykala testified that she made the recording so that her husband could try and figure out who had videoed him at Pearcy's residence.

{¶ 13} Mykala's audio recording was played for the jury and admitted into evidence. *See* State's Exhibit 55. A written transcription of the audio recording was also admitted into evidence. *See* State's Exhibit No. 56. At trial, Mykala identified the voices on the audio recording, including Steen's voice. During the recorded

conversation, Steen can be heard making statements implicating himself in the burglary of Pearcy's residence. Specifically, Steen can be heard saying that he had been at the residence, "four hours earlier" than Anthony and that he was not shown on the video. Steen also stated that he got rid of the property and that he had nothing in his house. Steen also stated: "Hey I went through every inch of that mother f*****g house[.] * * * Barn, I, I spent two nights out there straight."

{¶ 14} Detective Rodney Baker of the Darke County Sheriff's Office also testified at trial. Det. Baker testified that he was assigned to investigate the burglary of Pearcy's residence. After Det. Baker reviewed the surveillance video footage of the residence, he was able to identify Anthony Purdin as a suspect. Det. Baker testified that on October 12, 2018, he executed a search warrant at Anthony's residence. While executing the search warrant, Det. Baker observed a washer and dryer sitting outside in a neighboring driveway that belonged to Steen. Det. Baker testified that he believed the washer and dryer he observed were the ones stolen from Pearcy's residence. Det. Baker attempted to make contact with Steen that day, but Steen was not at home. Det. Baker testified that he took a photograph of the washer and dryer sitting in Steen's driveway. That photograph was admitted into evidence at trial. *See* State's Exhibit 59.

{¶ 15} Det. Baker testified that he returned to Steen's residence on October 15, 2018, and saw that the washer and dryer had been removed from Steen's driveway. Det. Baker testified that he then spoke to Steen about the washer and dryer and that Steen would not give him a definite answer about their location. Det. Baker testified that Steen permitted him to look inside his garage to confirm that the washer and dryer were not there. Upon doing so, Det. Baker observed the coffee table that had been stolen

from Pearcy's residence. Det. Baker testified that Steen repeatedly claimed that the coffee table was his, but later indicated that the coffee table belonged to someone else. Det. Baker testified that Steen eventually permitted him to seize the coffee table without a warrant. Det. Baker testified that his conversation with Steen was audio-recorded; and the recording was played for the jury and admitted into evidence at trial. *See* State's Exhibit No. 54. Det. Baker further testified that Union City police officers discovered Pearcy's stolen washer in an abandoned garage next to Steen's residence on October 22, 2018.

{¶ 16} Following Det. Baker's testimony, the State rested its case. Thereafter, the defense presented one witness, Casey Fancil. Fancil testified that she was friends with Steen and Mykala Purdin. Fancil testified that she was present during the conversation that was recorded by Mykala. Fancil testified that the context of the conversation on the audio recording was about the burglary at Pearcy's residence. Fancil testified that during the conversation, they were speculating who told the police about Anthony's involvement in the burglary and who might have videoed Anthony at Pearcy's residence. Fancil also testified that the entire conversation was approximately one to two hours long. Following Fancil's testimony, the defense rested its case and moved the trial court for a Crim.R. 29 acquittal, which the trial court denied.

{¶ 17} On June 15, 2020, the parties filed a supplemental joint statement of the evidence/proceedings that was approved by the trial court the following day. The supplemental joint statement provided additional testimony given by Pearcy, Noah, and Wiley. According to the supplemental joint statement, Noah testified that he regularly stayed at the residence over the weekends to work on vehicles. Noah also testified that

the residence had a broken window and a forced-open door that was not in that condition when he was last at the residence on October 5, 2018. Wiley also testified that there was no broken window or forced-open door the last time she was at the residence. Both Pearcy and Wiley testified that Pearcy's residence was kept locked and secured and that only Noah and Wiley had permission to be at the residence.

{¶ 18} As previously noted, the jury found Steen guilty of burglary in violation of R.C. 2911.12(A)(3). Steen now appeals from his burglary conviction, raising two assignments of error for review. For purposes of clarity, we will address Steen's assignments of error together.

## First and Second Assignments of Error

{¶ 19} Under his first and second assignments of error, Steen contends that his conviction for burglary under R.C. 2911.12(A)(3) was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

### Sufficiency of the Evidence

{¶ 20} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a

reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 21} As previously noted, Steen was convicted of burglary under R.C. 2911.12(A)(3), which provides that:

> No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.

{¶ 22} Steen contends that his conviction under R.C. 2911.12(A)(3) was not supported by sufficient evidence because the State failed to present evidence establishing that: (1) he trespassed in Pearcy home by "force, stealth, or deception"; and (2) that Pearcy's home was an "occupied structure." We find no merit to either of Steen's claims.


(1) Trespass by Force, Stealth, or Deception:

{¶ 23} For Steen's burglary conviction to stand, there must have been sufficient evidence to establish that Steen trespassed in Pearcy's residence by force, stealth, or deception. We will first address the element of trespass. "Trespass means knowingly entering or remaining on the land or premises of another, without a privilege or permission to be there." *State v. Baker*, 2016-Ohio-315, 58 N.E.3d 498, ¶ 21 (2d Dist.), citing R.C.

2911.21.

{¶ 24} The trial testimony of Pearcy, Noah, and Wiley clearly establishes that Steen did not have permission to enter Pearcy's residence. Despite this, Steen argues that there was no direct, eyewitness testimony indicating that he ever entered Pearcy's residence. There was, however, audio-recorded evidence in which Steen can be heard saying that he was at Pearcy's residence and that he went through "every inch" of Pearcy's house. *See* State's Exhibit 55 and 56. There was also quite a bit of circumstantial evidence indicating that Steen trespassed in Pearcy's residence. For example, Det. Baker testified that the day after the burglary was reported, he observed what he believed to be the washer and dryer stolen from Pearcy's home sitting in Steen's driveway. Three days later, Det. Baker also found Pearcy's stolen coffee table inside Steen's garage. The evidence also established that a week after the coffee table was found, law enforcement officers discovered Pearcy's stolen washer in an abandoned garage next to Steen's house. When viewed in a light most favorable to the State, we find that the aforementioned circumstantial and audio-recorded evidence would permit any rational fact finder to conclude that Steen trespassed in Pearcy's residence.

{¶ 25} Having found sufficient evidence of Steen's trespass, we must now determine whether there was sufficient evidence establishing that the trespass was committed by "force, stealth, or deception." R.C. 2911.12(A). " 'Force' as used in R.C. 2911.12(A) 'means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.' " *State v. Brock*, 2d Dist. Clark No. 2018-CA-112, 2019-Ohio-3195, ¶ 24, quoting R.C. 2901.01(A)(1). "[T]he requirement of 'force' is satisfied by 'any effort physically exerted.' " *Id.*, quoting *State v. Hudson*, 2018-Ohio-

423, 106 N.E.3d 205, ¶ 16 (2d Dist.) and *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21. For example, evidence of a broken window at a residence can establish the use-of-force element of burglary. *See, e.g., State v. McClurkin*, 10th Dist. Franklin No. 11AP-944, 2013-Ohio-1140, ¶ 49; *State v. Brown*, 9th Dist. Medina No. 14CA0004-M, 2015-Ohio-640, ¶ 21, 24. Opening an unlocked door is also sufficient to establish entry by force. *See, e.g., State v. Cantrell*, 2d Dist. Montgomery No. 26975, 2016-Ohio-7623, ¶ 12 (witness's testimony that defendant opened a screen door to walk through an open inner door of victim's apartment was sufficient to prove "force"); *State v. McWilliams*, 2d Dist. Greene No. 2000-CA-89, 2001 WL 1203395, *3 (Oct. 12, 2001) ("In Ohio, opening a closed but unlocked door amounts to sufficient force to prove the element of force in the offense of Burglary"); *State v. Ford*, 2d Dist. Montgomery No. 15374, 1996 WL 257442, *2 (May 17, 1996) ("[t]he effort necessary to open a door, locked or unlocked, is sufficient to satisfy the element of 'force' necessary to prove burglary").

{¶ 26} In this case, the testimony and photographic evidence presented at trial established that a window to Pearcy's residence had been broken and that a door was forced open. The testimony of Dep. Magel indicated that the broken window was the assailant's likely point of entry into the residence. Despite this evidence, Steen argues that the use-of-force element was not satisfied because the State failed to present evidence establishing when the window was broken and whether the door to the residence was closed and locked prior to Pearcy's son, Noah, reporting the burglary on October 11, 2018. Steen's argument, however, is not supported by the record.

{¶ 27} According to the joint statement of evidence/proceedings, Noah testified

that he was at the residence on October 5, 2018, and that during that time, nothing was out of order. The supplemental joint statement of the evidence/proceedings additionally provided that Noah testified that the residence's window was not broken and that the door was not forced open on October 5, 2018. Wiley also testified that the window had not been broken and that the door had not been forced open when she was last at the residence. Therefore, despite Steen's claim otherwise, the evidence established that the window was broken sometime between October 5, 2018, and October 11, 2018. We also note that both Pearcy and Wiley testified that the residence was kept locked and secured.

{¶ 28} That being said, the evidence indicates that Anthony Purdin and other individuals were at the residence prior to Steen. Therefore, a reasonable fact finder could have determined that one of those individuals broke the window to Pearcy's residence and also left the door open before Steen ever trespassed in the property. Under those circumstances, Steen's trespass would not have been by force. However, even if that were the case, we find that there was sufficient evidence establishing that Steen trespassed by stealth.

{¶ 29} " 'Stealth' has been defined as 'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.' " *State v. Patton*, 2d Dist. Clark No. 2011-CA-94, 2013-Ohio-961, ¶ 14, quoting *State v. Ward*, 85 Ohio App.3d 537, 540, 620 N.E.2d 168 (3d Dist.1993). Several appellate courts in Ohio have held that entering an open door at night under the cover of darkness is sufficient to establish the element of stealth. *See, e.g., State v. Biddlecom*, 8th Dist. Cuyahoga No. 76087, 2000 WL 354754, *5 (Apr. 6, 2000) (entry

through an open garage door at night was sufficient to establish entry by stealth); *In re Carter,* 4th Dist. Jackson Nos. 04CA15 and 04CA16, 2004-Ohio-7285, ¶ 26 (unannounced entry under the cover of darkness was sufficient to establish the element of stealth); *State v. Montgomery*, 12th Dist. Warren No. CA94-09-082, 1995 WL 264885, *2 (May 8, 1995) (entry into a garage during the middle of the night under the cover of darkness while remaining as quiet as possible was sufficient to establish the element of stealth); *State v. Mitchell,* 4th Dist. Washington No. 07CA50, 2008-Ohio-2419, ¶ 24 (entry into a closed business establishment without permission in the middle of the night in the company of others who had forced entry was sufficient to establish the element of stealth). This court has also held that a defendant's uninvited entry into an unlocked house in the middle of the night while the occupants were sleeping was sufficient to establish the element of stealth to support a burglary conviction.   *State v. Buelow*, 2d Dist. Clark No. 2004-CA-18, 2004-Ohio-6052, ¶ 64.

{¶ 30} In this case, the evidence establishes that Steen trespassed in Pearcy's residence at night, under the cover of darkness.   Specifically, the evidence establishes that the surveillance video footage of the residence was only visible during the daylight hours.   According to Dep. Magel, only shadows of people could be seen on the video during the night-time hours, and Steen was not visible in any of the video footage. Nevertheless, during the audio-recorded conversation with Mykala Purdin, Steen admitted to being at the residence and going through "every inch" of the house.   Steen also can be heard saying that he was not shown on the video footage and that he had spent two nights at the property.   Therefore, the evidence established that Steen's decision to trespass at night ultimately aided him in concealing his identity on the video

footage. Taking all of this into consideration, we find that evidence of Steen entering a house with a broken window and an open door on two different nights to steal property under the cover of darkness was sufficient to establish that Steen trespassed by stealth.

{¶ 31} When viewing all the aforementioned evidence in a light most favorable to the State, we conclude that any rational factfinder could have found that Steen trespassed in Pearcy's residence by force and/or by stealth.

(2) Occupied Structure:

{¶ 32} Pursuant to R.C. 2909.01(C)(1), an "occupied structure" includes "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof" that "is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present." Therefore, " '[a] structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure "maintained" as a dwelling within the meaning of R.C. 2909.01[(C)].' " *State v. Johnson*, 188 Ohio App.3d 438, 2010-Ohio-3345, 935 N.E.2d 895, ¶ 18 (2d Dist.), quoting *State v. Green*, 18 Ohio App.3d 69, 480 N.E.2d 1128, paragraph one of the syllabus (10th Dist.1984). *Accord State v. Ropp*, 2d Dist. Champaign No. 2018-CA-44, 2020-Ohio-824, ¶ 42.

{¶ 33} "The mere fact that a residence has no actual tenant or owner living in it does not establish that the structure is unoccupied within the meaning of the Revised Code." *Ropp* at ¶ 44, citing *Johnson* at ¶ 20. Rather, an "occupied structure" still

exists under R.C. 2909.01(C)(1) where a dwelling is temporarily not being occupied as a place of habitation and where persons are likely to be present from time to time to look after the property to help maintain its character as a dwelling. *State v. Beddow*, 2d Dist. Montgomery No. 18957, 2002 WL 252478, *2 (Feb. 22, 2002), citing *Green* at 72.

{¶ 34} In this case, the evidence established that the owner of the residence, Pearcy, moved to Florida in April 2018 for his job, but left many of his belongings at the residence and returned to the residence intermittently. The photographs admitted into evidence showed that several items of furniture, clothing, kitchenware, and other personal belongings were inside the residence at the time of the burglary. Despite moving away for college, Pearcy's son, Noah, testified that he regularly stayed at the residence over the weekends. Wiley additionally testified that she began looking after the residence for Pearcy once he moved to Florida. Therefore, although Pearcy had been absent from the residence for a prolonged period of time, the evidence established that the residence was looked after by Noah and Wiley and was maintained as a temporary dwelling for Pearcy and Noah at the time of the burglary.

{¶ 35} When viewing the aforementioned evidence in a light most favorable to the State, we conclude that sufficient evidence was adduced to establish that Pearcy's residence was an occupied structure.

*Manifest Weight of the Evidence*

{¶ 36} Steen also contends that his conviction for burglary was against the manifest weight of the evidence. "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by

the evidence is more believable or persuasive." (Citation omitted.) *Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14. "A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances." *Id.*, citing *Martin* at 175.

{¶ 37} After reviewing the entire record and weighing all the evidence and reasonable inferences, we do not find that the jury lost its way and created a manifest miscarriage of justice when it found Steen guilty of burglary. The weight of the evidence established that Steen trespassed inside Pearcy's residence by force and/or by stealth and stole various items of property from the residence. Despite Pearcy's moving to Florida for his job, the weight of the evidence also established that Pearcy's residence was an occupied structure, as Pearcy's son, Noah, and Pearcy's friend, Wiley, regularly looked after the residence and the residence was maintained as a temporary dwelling for Pearcy and Noah at the time of the burglary.

{¶ 38} For the foregoing reasons, Steen's first and second assignments of error

are overruled.

## Conclusion

**{¶ 39}** Having overruled all assignments of error raised by Steen, his judgment of conviction is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Deborah S. Quigley
Alexander S. Pendl
Hon. Jonathan P. Hein