[Cite as *State v. Todorov*, 2023-Ohio-3976.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,              :

                                No. 112416

    v.                               :

MITKO TODOROV,                           :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 2, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-672175-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Samantha Sohl, Assistant Prosecuting Attorney, *for appellee*.

P. Andrew Baker, *for appellant*.

---

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Mitko Todorov, appeals his conviction for burglary and tampering with evidence. For the reasons that follow, we affirm.

{¶ 2} In 2022, Todorov was charged with one count of burglary pursuant to R.C. 2911.12(A)(2), a felony of the second degree, and one count of tampering with

evidence, a felony of the third degree pursuant to R.C. 2921.12(A).  The case proceeded to a jury trial at which the following relevant evidence was presented.

{¶ 3} Frank Raffaeli is the trustee of his mother's estate that owns a home in Strongsville, Ohio.  The house is set back in the Metroparks.  No one has lived in the home on a continual basis since Raffaeli's mother died in 2017.  Raffaeli testified it is his responsibility as trustee to keep the property safe and maintained.  He pays for the utilities, keeps the house furnished, and is in the process of liquidating, or selling, the house.  The house was burglarized in July 2022.

{¶ 4} Raffaeli lives in Texas, but periodically stays at the house.  He was at the house a few months before the burglary, in March 2022, but could not remember if he spent the night; he also owns a home in nearby Solon, Ohio.  Raffaeli also stayed at the property shortly after the incident, in August 2022, but again could not remember if he stayed at the property overnight.  He testified he stayed at the house twice in December 2022 for approximately eight days.  According to Raffaeli, no one stayed at the house overnight between the time of his last visit in March 2022 and the burglary in July 2022.

{¶ 5} Raffaeli has a handyman check on and maintain the home; the handyman tends to the property an average of once a week.  Raffaeli has four security cameras, two inside and two outside the house, which are sound- and motion- activated.

{¶ 6} On July 1, 2022, around 8:30 p.m., Raffaeli received an alert from his security cameras that motion was detected in the dining room of the house.  Raffaeli

opened the app on his phone that controls the security cameras and saw an unknown person in the home, who did not have permission to be there.

{¶ 7} Raffaeli called the police. When the police arrived on scene, they surrounded the house and commanded the person inside the house, later identified as Todorov, to exit the home. Todorov came out of the house, was patted down, and the police recovered $450, which was determined to be Todorov's personal property. He also had some grocery bags on him, but the testifying police officers were not the ones who had inventoried the bags and could not testify as to their contents.

{¶ 8} The police photographed the house, documenting a broken window, a broken lock on another window, and gauge marks on a door, as if someone was trying to pry it open. The kitchen drawers and cabinets had been opened. The police confiscated Todorov's bicycle.

{¶ 9} Raffaeli's security cameras recorded Todorov picking up items inside the home, including a security camera, and a roll of toilet paper. He was also seen with a blanket and pillow. The recording shows Todorov noticing the camera and moving its position. Raffaeli testified he keeps bedding in the house. When the police arrived, the cameras were unplugged; however, one of the security cameras continued to stream the video in the home because it was on a battery backup. The other camera was "in pieces on the kitchen floor."

{¶ 10} Todorov initially testified that he took the bus to Strongsville on the day of the burglary to shop at Giant Eagle grocery store and have a picnic in the park; he later testified that he took the bus to Strongsville the day before the break-in and

slept in his sleeping bag in a park pavilion. His testified he was not able to put his bicycle on the bus because it was "still in pieces inside the box."

{¶ 11} According to Todorov, he mistook the house as a park building, so he knocked and then went inside to look for a bathroom. Once he realized he had entered a private home, he tried to leave, but the police were there and he was arrested.

{¶ 12} The jury convicted Todorov of tampering with evidence, as charged in the indictment, and the lesser included offense of burglary, a felony of the third degree. The court sentenced him to a total of 30 months in prison.

{¶ 13} It is from this conviction that Todorov appeals, raising the following assignments of error:

I.      Defendant-appellant's convictions were against the manifest weight of the evidence.

II.     The trial court erred when it declined to instruct the jury on the lesser included offense of trespass.

III.    The trial court erred in giving an incorrect answer to a jury question.

{¶ 14} In his first assignment of error, Todorov contends that his convictions were not supported by sufficient evidence.[1]

---

[1] Although Todorov's first assignment of error states his convictions were "against the manifest weight of the evidence," within his assigned error, he solely argues that there was insufficient evidence to support his convictions; therefore, we consider only his sufficiency claim. *See* App.R. 12(A)(2) and 16(A).

**Burglary — Occupied Structure**

{¶ 15} A sufficiency of the evidence argument disputes whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 16} R.C. 2911.12 defines burglary and distinguishes a second-degree felony burglary from a third-degree felony burglary. The statute states, in pertinent part:

No person, by force, stealth, or deception, shall do any of the following:

＊ ＊ ＊

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

(3) Trespass in an occupied structure or in a separately secured separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.

{¶ 17} A violation of section (A)(2) is a felony of the second degree, and a violation of section (A)(3) is a felony of the third degree. R.C. 2911.12(D). Todorov was charged with burglary pursuant to R.C. 2911.12(A)(2) but convicted of the lesser included offense of burglary under R.C. 2911.12(A)(3).

{¶ 18} Todorov contends that his conviction under R.C. 2911.12(A)(3) was not supported by sufficient evidence because the state failed to present evidence establishing that the home was an "occupied structure."

{¶ 19} As it pertains to this case, R.C. 2909.01(C) defines an "occupied structure" as "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof" that

> (1) is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

> (2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

> (3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

{¶ 20} Todorov cites *State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, to support his argument that there was insufficient evidence that he committed burglary. In *Goins*, the victim left for a trip and did not return until she found out that her home had been burglarized. The appellant was convicted of second-degree burglary. This court determined that there was insufficient evidence to support a conviction for second-degree felony burglary, because there was no evidence that a person was "likely to be present," in the victim's home. However,

"R.C. 2911.12(A)(3), which defines a third-degree felony burglary offense, does not include the element of presence, or likely presence." *Id*. at ¶ 23, citing *State v. Brown*, 10th Dist. Franklin No. 05AP-601, 2006-Ohio-2307, ¶ 18. "Burglary under R.C. 2911.12(A)(3) is a lesser included offense of burglary under R.C. 2911.12(A)(2) because it contains all the elements of R.C. 2911.12(A)(2) except the presence or likely presence of another." *Goins* at *id*., citing *State v. Cole*, 8th Dist. Cuyahoga Nos. 103187, 103188, 103189, and 103190, 2016-Ohio-2936, ¶ 45, citing *State v. Butler*, 8th Dist. Cuyahoga No. 97649, 2012-Ohio-4152, ¶ 18. Thus, while there was insufficient evidence of second-degree felony burglary, there was sufficient evidence of third-degree felony burglary. This court remanded the case to the trial court with instructions to modify his conviction to third-degree felony burglary. *Id*. at ¶ 28.

{¶ 21} Here, the court included a jury instruction on third-degree felony burglary and the jury convicted Todorov of that crime. The state did not need to prove that Raffaeli or another person was present or likely to be present when Todorov burglarized the home to convict him of third-degree felony burglary.

{¶ 22} Todorov also cites *State v. Whitaker*, 169 Ohio St.3d 647, 2022-Ohio-2840, 207 N.E.3d 677, where the Ohio Supreme Court found that a house was not an "occupied structure" as defined in R.C. 2909.01(C)(1). The testimony at trial in *Whitaker* was that the house was vacant because it was undergoing renovations. The house had been "gutted," and the state did not present any testimony when the house was last occupied, "indicating it had been years since anyone lived there." *Id*.

at ¶ 63. The court further noted that although the homeowner intended to renovate the house to make it suitable for "future inhabitants, the evidence demonstrates that it had been a prolonged period since the house had been occupied and that it would remain unoccupied indefinitely." *Id.*

{¶ 23} Here, Raffaeli testified that he visited the house in March, August, and December 2022. When he was not at the house, he had a handyman who would visit the house weekly. In addition, Raffaeli kept the utilities on in the house, kept it furnished, and was intent on selling the property. The house was not being renovated, was not "gutted" rendering it uninhabitable, and Raffaeli testified that although he could not remember if he stayed in the house the last time he visited, he did, at times, stay overnight at the house.

{¶ 24} In *State v. Williams*, 8th Dist. Cuyahoga No. 92668, 2009-Ohio-6826, this court upheld a conviction for burglary pursuant to R.C. 2911.12(A)(3) finding that the state showed sufficient evidence that a house was an "occupied structure." The house in question had been vacant for four months and was owned by an out-of-state company that intended on selling the property. This court reasoned that "the relevant question in determining if a structure is 'occupied' concerns the residential purpose of the dwelling, rather than the presence or absence of an occupant." *Id.* at ¶ 14. Therefore, "'[a] structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure "maintained" as a dwelling

within the meaning of R.C. 2909.01[(C)].'" *Id.*, quoting *State v. Green*, 18 Ohio App.3d 69, 72, 480 N.E.2d 1128 (10th Dist.1984). *See also State v. Steen*, 2d Dist. Darke No. 2019-CA-16, 2020-Ohio-4598, ¶ 32; *State v. Johnson*, 188 Ohio App.3d 438, 2010-Ohio-3345, 935 N.E.2d 895, ¶ 18 (2d Dist.).

{¶ 25} This court determined that although no one had been living in the house for four months, the house still had "residential purpose" and was being sold as a residential dwelling; therefore, it qualified as an occupied structure. *Williams* at ¶ 15.

{¶ 26} In *State v. Bell*, 8th Dist. Cuyahoga No. 101489, 2015-Ohio-1294, this court upheld a conviction for second-degree felony burglary, finding that the state provided sufficient evidence that the home was an occupied structure. In *Bell*, the homeowner died and the homeowner's daughter maintained the home. She visited the home "three to four" times a week but those visits decreased to once every two to three weeks in the winter. The house remained furnished, had appliances, and the daughter kept the utilities on. The appellant argued that the house was not an occupied structure because its owner had died. This court disagreed, again noting that "the relevant inquiry in determining if a structure is occupied concerns the residential purpose of the dwelling, rather than the presence or absence of an occupant." *Id.* at ¶ 22. This court reasoned that although the original homeowner was deceased, the house was not abandoned. This court found that the house maintained its residential purpose even though it was vacant because the daughter and her husband maintained the property and when the burglary occurred, the

house was fully equipped with utilities, appliances, a furnace, and furniture. *Id.* at ¶ 23.

{¶ 27} In *Steen*, the Second District Court of Appeals found that a home was an "occupied structure" when evidence showed that the owner had moved to Florida but left many of his belongings at the residence and returned to the residence intermittently, the owner's college-aged son regularly stayed at the residence over the weekends, and the owner had a maintenance person who looked after the residence. *Id.*, 2d Dist. Darke No. 2019-CA-16, 2020-Ohio-4598, at ¶ 34.

{¶ 28} When viewing the facts of this case in a light most favorable to the state, a rational trier of fact could have found that the house in this case was an "occupied structure" at the time of the burglary.

**Tampering with Evidence**

{¶ 29} R.C. 2921.12(A), which prohibits tampering with evidence provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶ 30} Todorov argues that the state failed to provide sufficient evidence of tampering with evidence because he was not aware of any investigation or potential investigation. Although he concedes he moved the security cameras, Todorov maintains that he unplugged the cameras to avoid immediate detection, not to tamper with evidence.

{¶ 31} Tampering with evidence under R.C. 2921.12(A)(1) requires a person to act with purpose, meaning that the person has a specific intention to cause a certain result. *State v. Sharp*, 8th Dist. Cuyahoga No. 103445, 2016-Ohio-2634, ¶ 19. Additionally, "[t]he evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge," and the "[l]ikelihood [of an investigation] is measured at the time of the act of alleged tampering." *Id.* at ¶ 20, citing *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175.

{¶ 32} Todorov cites *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, to support his claim that the state must present additional evidence beyond the fact that a crime had been committed to show a defendant's knowledge of a likely investigation. In *Barry*, the appellant concealed heroin in her body. She was subsequently arrested several counties over from where she first possessed the heroin. The court found:

> Ohio does not recognize the "unmistakable crime" doctrine in connection with the offense of tampering with evidence because that doctrine erroneously imputes to the perpetrator constructive knowledge of a pending or likely investigation into a crime; merely establishing that the crime committed is an unmistakable crime is insufficient to prove that the accused knew at the time the evidence was altered, destroyed, concealed, or removed that an official proceeding or investigation into that crime was ongoing or likely to be instituted.

*Barry* at syllabus.

{¶ 33} However, as this court noted in *State v. Jones*, 8th Dist. Cuyahoga No. 108050, 2019-Ohio-5237, ¶ 38, the Supreme Court of Ohio subsequently limited the application of *Barry* in *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90

N.E.3d 857. In *Martin*, the defendant was charged with tampering with evidence for burning the clothes he wore during a shooting. Although the court continued to acknowledge that Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of a criminal offense, "'[a]s a matter of common sense, we can infer that a person who had shot two people and left them for dead in a residential neighborhood would know that an investigation was likely.'" *Jones* at ¶ 40, quoting *Barry* at ¶ 116.

{¶ 34} This court has noted, when discussing tampering with evidence, that "a surveillance camera creates a record of value to an investigation and the destruction of a camera during the commission of an offense stops the creation of such record and renders that aspect of the surveillance system useless for obtaining additional evidence in the investigation of such incident." *State v. Arafat*, 8th Dist. Cuyahoga No. 85847, 2006-Ohio-1722, ¶ 68.

{¶ 35} In this case, once Todorov broke into the house and saw security cameras, it is reasonable to believe he would know that someone — a homeowner, alarm company, or local authorities — would be alerted that there was an intruder in the house and an investigation would ensue. The video recording shows Todorov alert to the camera and then reposition it. When the police arrived, they noted the cameras were unplugged and one lay in pieces on the kitchen floor.

{¶ 36} In looking at the evidence in a light most favorable to the state, the jury could reasonably find that Todorov's action in unplugging the security cameras, moving the position of one of the cameras, and breaking the second camera altered

or destroyed the cameras with purpose to impair their value or availability as evidence in an impending investigation.

{¶ 37} Therefore, we find that there is sufficient evidence to support Todorov's convictions.

{¶ 38} The first assignment of error is overruled.

**Jury Instructions**

{¶ 39} In the second assignment of error, Todorov argues that the trial court erred in refusing to instruct the jury as to the lesser included offense of criminal trespass under R.C. 2911.21.

{¶ 40} R.C. 2945.74 provides, in relevant part: "When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser-included offense." *See also* Crim.R. 31(C); *State v. Lloyd*, 8th Dist. Cuyahoga No. 109128, 2021-Ohio-1808, ¶ 23.

{¶ 41} This court has defined a lesser-included offense as having the following: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *Lloyd* at ¶ 24.

{¶ 42} When the trial court is determining whether a lesser-included offense instruction is appropriate, it must view the evidence in the light most favorable to

the defendant. *Id.* at ¶ 25, citing *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285. A charge on the lesser offense is required "only when the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense." *State v. Willis*, 8th Dist. Cuyahoga No. 99735, 2014-Ohio-114, ¶ 50, citing *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2691, 911 N.E.2d 242.

{¶ 43} Juries are not to be presented with compromise offenses that are not sustained by the adduced facts. *State v. Dailey*, 8th Dist. Cuyahoga No. 89289, 2007-Ohio-6650, ¶ 39. Thus, a trial court must find there is sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included or inferior offense. *Lloyd* at ¶ 25. A lesser-included offense instruction requires more than "some evidence" that a defendant may have acted in such a way as to satisfy the elements of the lesser offense. *State v. Jackson*, 4th Dist. Highland No. 18CA7, 2018-Ohio-4289, ¶ 17, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992). "To require an instruction * * * every time 'some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense." *Jackson* at *id.*, citing *Shane* at *id.*

{¶ 44} Thus, while trespass is a lesser offense of burglary, it is error to instruct a jury on trespass if the facts do not support an acquittal on burglary and a conviction on trespass. *Dailey* at ¶ 39. In this case, the evidence presented at trial

does not reasonably support an acquittal of burglary. The evidence established that Todorov forced his way into the home, did not have permission to be there, and had a criminal purpose — there were pry marks on the door, a broken window, kitchen cabinets and drawers had been opened, the security cameras were unplugged, and one of the cameras was in pieces on the kitchen floor.

{¶ 45} Considering the above, we cannot say that the evidence presented at trial would reasonably support both an acquittal on the charge of burglary and a conviction upon the lesser-included offense of criminal trespass. Accordingly, the second assignment of error is overruled.

**Jury Question**

{¶ 46} In the third assignment of error, Todorov contends that the trial court erred when it gave the jury an incorrect answer to a jury question.

{¶ 47} During jury deliberations, the jury asked the court for the definition of the word "dwelling." Over defense counsel's objection, the court provided the following definition: "Dwelling means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

{¶ 48} Todorov argues that the definition differs from Ohio law in that it focuses on the original structure rather than the current status of the structure. He contends that under R.C. 2909.01(C)(1) the dwelling has to be maintained as such, i.e., a place that people currently live, and the trial court's definition did not provide this requirement. R.C. 2901.05(D)(2) provides: "Dwelling means building or

conveyance of any kind that has a roof over it and that is designed to be occupied by people lodging in the building or conveyance at night, regardless of whether the building or conveyance is temporary or permanent or is mobile or immobile."

{¶ 49} Neither the definition the court gave the jury nor the definition as found in Ohio law require that the dwelling be maintained as a habitation where people are currently residing. The court properly instructed the jury that an occupied structure "means any house * * * which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied * * *." The evidence at trial showed that the house was an occupied structure.

{¶ 50} Considering the above, the third assignment of error is overruled.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR